IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 09-cr-00497-REB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.      **RICK GLEN STRANDLOF**
          **aka RICK DUNCAN,**

        Defendant.

---

**MOTION TO DISMISS INFORMATION**

---

Comes now the Defendant, Rick Glen Strandlof, by and through his attorney, Assistant Federal Public Defender, Robert W. Pepin, and respectfully requests that this Court dismiss the charges against Mr. Strandlof in this case because 18 U.S.C. § 704 is unconstitutional, both facially and as applied to Mr. Strandlof. This motion is based on the First Amendment. As grounds for this motion, Mr. Strandlof states that:

1.      <u>Introduction</u>

The First Amendment commands, in unequivocal terms, that "Congress shall make no law. . . abridging the freedom of speech." U.S. Const. amend. I. Though the Supreme Court has explained that the First Amendment was not originally understood to permit all sorts of speech; rather, "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942); *see also Cox v. Louisiana*, 379 U.S. 536, 554 (1965). "These include the lewd and obscene, the profane, the libelous, and the

insulting or 'fighting' words - those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.*, 315 U.S. at 572 (citation omitted). Indeed, as is oft-quoted, "[t]he most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic." *Schenk v. United States*, 249 U.S. 47, 52 (1919). "The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent." *Id.*

Rick Strandlof is charged under the Stolen Valor Act, a law that criminalizes making a false claim of receiving military decorations. The law does not require proof of fraud, or that the false statement was made in order to obtain some benefit. It does not require any showing that the statement caused reliance or was material. It does not even require that Mr. Strandlof knew that his statement was false. It simply criminalizes the incorrect claim to certain military decorations in every context. Essentially, Congress has created a strict liability offense making it a crime to tell a lie about oneself.

The law is unconstitutional, both facially and specifically as applied to Mr. Strandlof. It falls outside the understood exceptions to the free speech clause and is overbroad. Falsehoods are not outside the realm of First Amendment protection, and therefore restrictions on false statements must be supported by a strong government interest and must be directly related to that interest. The government's stated interest in this law, protecting the reputation of military decorations, is insufficient to survive this exacting scrutiny. For this reason, the statute is unconstitutional as applied to Mr. Strandlof and the charges within the information should be dismissed.

2.  Factual Background

Mr. Strandlof is charged by information with five counts of falsely representing that he had been awarded a Purple Heart Medal and Silver Star Medal in violation of 18 U.S.C. § 704(b). According to discovery, Mr. Strandlof, admitted to FBI Agents that he represented to several people, including the press, that: (1) his name was "Rick Duncan"; (2) he had been in the United States Marine Corps; and (3) he was a wounded veteran of the Iraq War. In addition, several witnesses reported that Mr. Strandlof publically claimed that he was the recipient of both the Purple Heart and Silver Star medals as the result of injuries he sustained during combat in the Iraq War. Though these injuries are unknown, information received to date does suggest that Mr. Strandlof suffers from bi-polar personality disorder and/or other mental health disease or defects. It is alleged that Mr. Strandlof used the "Rick Duncan" persona in an effort to incorporate the Colorado Veteran's Alliance ("CVA").

3.  Argument

   A.  *The Stolen Valor Act falls outside the limited exceptions to the free speech clause.*

False speech is protected speech. It is true that "neither the intentional lie nor the careless error materially advances society's interest in uninhibited, robust, and wide-open debate on public issue." *Gertz v. Welsh*, 418 U.S. 323, 340 (1974) (internal citations omitted). And yet, the Supreme Court has recognized that false statements of fact are "inevitable in free debate." *Id.* If erroneous speech is punished, the risk is that speakers will be "cautious and restrictive" in the exercise of their constitutionally protected freedoms, which may lead to intolerable self-censorship." *Id.* Additionally, there is an ever-present concern about placing judgments about

3

truth and falsity in the hands of judges and juries. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964) ("Authoritative interpretations of the First Amendment have consistently refused to recognize an exception for any test of truth–whether administered by judges, juries, or administrative officials. . . ."); *Thomas v. Collins*, 323 U.S. 516, 545 (1945) (Jackson, J., concurring) ("The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech, and religion. In this field every person must be his own watchman for truth, because the forefathers did not trust any government to separate the true from the false for us."). For both of these reasons, "the First Amendment requires that we protect some falsehood in order to protect speech that matters." *Gertz*, 418 U.S. at 341. "Erroneous statements...must be protected if the freedoms of expression are to have the 'breathing space' they need to survive." *Brown v. Hartlage*, 456 U.S. 45, 60-61 (citations omitted).

Courts have said that false statements are not entitled to the same level of protection as truthful statements, *see id.* at 60, though precisely what that means has not been quantified. However, examining the Supreme Court's case law recognizing the First Amendment exception for knowing falsehoods shows that the distinction is really a "libel/defamation exception," justified primarily by the desire to prevent injury to a specific person's reputation. The Washington State Supreme Court observed in *Rickert v. State, Public Disclosure Comm'n*, 168 P.3d. 826, 830 n.7 (Wash. 2007):

> The Supreme Court has indicated that false statements about private individuals made with actual malice, but which are not defamatory, may not be protected speech. However, the Court has not held that false statements about public figures made with actual malice, but which are not defamatory, are devoid of all constitutional protection. All of the Court's assertions that calculated falsehoods about public officials or figures lack constitutional protections have been made in the context of suits involving defamation. Thus, the statements deemed

4

> unprotected speech in [those] cases were all defamatory, as well as false. Hence, none of [those] cases are determinative as to the constitutional protection afforded false but non-defamatory statements.

*Id.* (internal citations omitted).

Further, the basic bedrocks of judicial review of First Amendment jurisprudence remain unchanged. Defamation cases establish that even in the context of false statements, courts will consider the weight of the government's interest behind the law. *See Gertz*, 418 U.S. at 348 (noting the "strength of the legitimate state interest in compensating private individuals for wrongful injury to reputation."). Moreover, courts have examined the fit of the law to that purpose. *See id.* at 349 ("It is therefore appropriate to require that state remedies for defamatory falsehood reach no further than is necessary to protect the legitimate interest involved.").

Here, however, the Stolen Valor Act is not focused on punishing a person for telling lies about others; it criminalizes telling a lie about oneself. The Court's free speech jurisprudence cannot reasonably be read to provide for a generic "false statement of fact" exception to the First Amendment, permitting Congress to criminalize any lie it dislikes. Rather, false statements not defamatory appear to be fully protected under the First Amendment. *See Rickert*, 168 P.3d at 831.

> B. *The Stolen Valor Act is unconstitutional as applied to Mr. Strandlof because the government's interest in protecting the reputation of military decorations is insufficient to support this content-based restriction.*

Indeed, a stricter review is necessary in this context than in defamation or libel given this law is a content-based restraint on protected speech. *See Consolidated Edison Co. v. Public Serv. Comm'n*, 447 U.S, 530, 537-38 (1980) ("The First Amendment's hostility to content-based regulation extends not only to restriction on particular viewpoints, but also to prohibition of public discussion of entire topic."). Content-based restrictions are "presumptively inconsistent

with the First Amendment." *See Simon & Schuster v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115-16 (1991). Thus, this Court's review of the statute, both the government's stated purpose and its chosen means, should be exacting.

In light of the free speech interests at stake here, the rationale underlying this law is insufficient. The legislative history accompanying the most recent amendment to 18 U.S.C. § 704 states that the purpose behind the law is *symbolic* in nature, that "[f]raudulent claims surrounding [military decorations] damage the reputation and meaning of such decorations and medals." *See* 18 U.S.C. § 704, P.L. 109-437 (December 20, 2006), Attachment A. While protecting the reputation of military decorations is a legitimate government interest, it is not compelling and therefore, does not survive within the context of the First Amendment.

Courts have struck down laws grounded in such "symbolic" interests. In *Texas v. Johnson*, 491 U.S. 397 (1989), the Supreme Court considered Texas' state interest in prohibiting flag burning. The state phrased its interest as "preserving the flag as a symbol of nationhood and national unity." *Id.* at 413. The Court recognized the "special place reserved for the flag" and the legitimate interest in preserving the flag as the "unalloyed symbol of our country." *Id.* at 418. Nonetheless, the Court held that the state cannot create a protective fence around certain symbols in an effort to limit the kinds of messages that can be made concerning those symbols. *See id.* at 417. "To conclude that the government may permit designated symbols to be used to communicate only a limited set of messages would be to enter territory having no discernable of defensible boundaries." *Id.* In effect, the state cannot make certain symbols so sacrosanct that they become exempt from the normal rules regarding truth and falsity. If protecting the flag as a symbol of national unity does not rise to the level of a compelling state interest, it is impossible to say that protecting the reputation of military decorations would.

Also, allowing Congress to decide which symbols deserve protection is problematic. As the Supreme Court recognized in *Johnson*, christening some national symbols as sacred would require judges and lawmakers "to consult [their] political preferences, and impose them on the citizenry in the very way the First Amendment forbids us to do." *Johnson*, 491 U.S. at 417. Such value judgments simply should not be legislated.

For these reasons, Section 704(b) is unconstitutional as applied to Mr. Strandlof. The stated interest does not support such a significant intrusion into protected speech.

    C.    *The Stolen Valor Act is Overbroad.*

A law is overbroad if it "does not aim specifically at evils within the allowable area of State control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech. . . ." *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940). The Supreme Court has required that overbreadth "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 625 (1973).

The statute is overbroad because it fails to include an intent requirement. "The existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *Dennis v. United States*, 341 U.S. 494, 500 (1951); *see also Morissette v. United States*, 342 U.S. 246, 250-52 (1952). Thus, to determine whether section 704(b) is constitutional as written, this Court must examine whether any well-recognized exception to the need for mens rea requirement exists. None do in this case.

Strict liability offenses are common in areas that are highly regulated, particularly those that are regulated for public safety. *See id.*, 342 U.S. at 256-59. However, generally, the content of one's speech is not an area subject to strict public regulation. In fact, the "First Amendment

7

constraints presuppose the opposite view." *United States v. X-citement Video*, 513 U.S. 64, 71 (1994) (noting this presupposition in the context of the contents of magazines and films).

Further, the penalties that attach to the violation are significant in determining whether the statute should be construed to not require a mens rea; minor infractions or offenses punishable only by fine are often strict liability offenses. *See Staples v. United States*, 511 U.S. 600, 616 (1994). Here, a violation of section 704(b), where the decorations claimed are a Purple Heart and Silver Star, is a Class A misdemeanor, punishable by up to one-year imprisonment, by probation, or, by fine. *See* 18 U.S.C. § 704(d). The possible punishment is not so negligible as to support omitting the intent requirement.

The third exception relates to cases where Congress specifically intended to exclude a mens rea requirement. But the lack of the mens rea element on the face of the statute is not sufficient to show such intent. *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 438 (1978) ("[F]ar more than a simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement."). Nothing in the legislative history explicitly expresses that Congress intended to include individuals mistaken about their status as it related to their military decorations.

Thus, none of the well-recognized exceptions to the mens rea requirement apply. Moreover, courts have historically been loathe to sanction strict liability offenses where the law impinges on speech. *See Smith v. State of California*, 361 U.S. 147, 150-54 (1959) (collecting cases); *see also X-Citement Video*, 513 U.S. at 78. The lack of a mens rea requirement, therefore, renders a law impinging on speech particularly suspect.

Additionally, this law not only applies to mistakes but also to innocent bragging or satire. Arguably, this law could apply to an actor claiming he received a military decoration while portraying a role in a play or film. Certainly, the government's interest in banning such speech is outweighed by the First Amendment rights implicated. The Supreme Court has noted that the First Amendment protects statements that cannot "reasonably [be] interpreted as stating actual facts about an individual.*" Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (quoting *Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988). "This provides assurance that the public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Id*. (quoting *Falwell*, 485 U.S. at 53-55. Here, the Stolen Valor Act goes so far as to criminalize even those statements that are plainly incredible and not worthy of actual belief. Thus, the statute is overbroad.

C. *The Stolen Valor Act is unconstitutional because it is not carefully tailored to the government interest.*

Even if protecting the integrity of military decorations were a sufficiently weighty interest, the Stolen Valor Act is also unconstitutional because it reaches farther than necessary to protect that interest. *See Gertz*, 418 U.S, at 349 (It is. . .appropriate to require that state remedies for defamatory falsehood reach no further than is necessary to protect the legitimate interest involved."). There is no reason to think that criminal prosecution is necessary. For example, civil fines would serve as an adequate alternative to ensure that false claims of military decorations are not lightly made.

More importantly, there is no reason to believe that counter-speech is an ineffective method of protecting the government's state interest. The Supreme has often noted that "[w]henever compatible with the underlying interests at stake, under the regime of [the First

9

Amendment], we depend for correction not on the conscience of judges and juries but on the competition of other ideas." *Brown*, 456 U.S. at 61 (citations omitted). That is, wherever possible, the preferred remedy for false speech is "more speech." *White v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring) ("If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence.") (overruled on other grounds).

However, it is true that there are cases where such a remedy is inadequate. For example, false statements that fall within the realm of commercial speech can be regulated, in part, because consumers often make decisions on the spot based on packaging or in-store marketing without the time for the seller's ideas to be fully tested. *See Rubin v. Coors Brewing Co.*, 514 U.S. 476, 495-96 (Stevens, J., concurring) (1995). In libel, counter-speech is also ineffectual to counter falsehoods given the harm to a person's reputation is often immediate upon the falsehood becoming public. *See, e.g., Falwell*, 485 U.S. at 52.

Here, these concerns do not exist. The stated goal of the Stolen Valor Act is to ensure that the value of military decorations are not tainted by the false claims of those who have not received them. But these false claims have not gone unnoticed or unchallenged. Surely it was public exposure of individuals making these claims that served as the impetus to enact the Stolen Valor Act. Certainly then, public exposure of those who have falsely claimed to have received a military decoration is sufficient to protect the meaning and value of these medals to true military honorees. Public outcry at such false claims underscores the reality that the reputation of these military honors is not endangered. *See Johnson*, 491 U.S. at 418-20 (noting that public reaction to flag burning indicated that the value of the flag as a symbol of national unity is not threatened by such conduct.).

Indeed, Mr. Strandlof's case illustrates this point. Once it became clear that Mr. Strandlof's colleagues could not verify his representations as "Rick Duncan," he was challenged by his colleagues associated with the CVA. There have been numerous newspaper articles and network news interviews confronting Mr. Strandlof, airing the evidence against his claims. *See* Attachment B. This is precisely what should have happened. If a person is believed to have made a false statement, that statement should be challenged, explained, countered, or disproved, so that everyone can come to their own conclusion about the truth of the matter. Allowing public debate does not threaten the value of either the Purple Heart or Silver Star Medals. Because the law is not necessary to protect the stated government interest, it cannot survive the demanding scrutiny given to legislation that impinges on important First Amendment rights. The proper remedy in these cases is more speech, not criminal prosecution.

## CONCLUSION

For the foregoing reasons, the charges in this case should be dismissed.

Respectfully submitted,

RAYMOND P. MOORE
Federal Public Defender


s/ Robert W. Pepin
ROBERT W. PEPIN
Office of the Federal Public Defender
633 - 17th Street, Suite 1000
Denver, Colorado 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
E-mail: Robert_Pepin@fd.org
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2009, I electronically filed the foregoing

**MOTION TO DISMISS INFORMATION**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

    Jeremy S. Sibert, Assistant U.S. Attorney
    Jeremy.Sibert@usdoj.gov


and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Richard Glen Strandlof
    c/o Jefferson County Jail


    s/ Robert W. Pepin
    ROBERT W. PEPIN
    Assistant Federal Public Defender
    Attorney for Defendant
    633 - 17th Street, Suite 1000
    Denver, Colorado 80202
    (303) 294-7002
    (303) 294-1192
    Robert_Pepin@fd.org