IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 09-cr-00497-REB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.     RICK GLEN STRANDLOF,
        a/k/a RICK DUNCAN,

       Defendant.

---

**SUPPLEMENTAL MOTION AND REPLY TO GOVERNMENT'S RESPONSE**

---

Defendant Rick Glen Strandlof, by and through undersigned counsel, Assistant Federal Public Defender, Robert W. Pepin, hereby supplements his original motion to dismiss as ordered by the Court and replies to the government's response to his Motion to Dismiss the Information on First Amendment grounds. In support of this Reply, Mr. Strandlof states:

    A.    <u>The speech prohibited under 18 U.S.C. § 704(b) is protected speech.</u>

The Court observes that it is not readily apparent to the Court that various precedents limiting restrictions upon speech apply when admitted false statements of fact, "untethered from an expression of an idea or opinion" are at issue. The government, unfettered by the Court's reflective approach, would argue, as it does in its response, that false speech is simply not protected speech. It goes so far as to claim that the First Amendment does not afford any protection to knowing falsehoods. (*See* Government's Response at 7-8) (quoting *Gertz v. Robert Welch, Inc.*, 481 U.S. 323, 342 (1974). Mr. Strandlof's reply to the government's claim answers the Court's questions. Mr. Strandlof replies that the government is correct that courts have

sometimes stated that false speech is unprotected but it misapprehends the Supreme Court's case law recognizing the First Amendment exception for intentional false statements. The cases that carve out such an exception arise principally in the libel or personal privacy context. The purpose of the exception is to balance the protections of the First Amendment with the long-recognized government interest in limiting speech injuring personal reputations. For example, in *Gertz*, the case cited by the government, the Court explained that the *New York Times/Sullivan* standard "defines the level of constitutional protection appropriate to the context of defamation of a public person." *See Gertz*, 481 at 342-343. Under the *New York Times/Sullivan* test, public figures may "recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Id.*

Clearly this test does not imply, as the government suggests, that intentional falsehoods are never given free speech protection. Indeed, *Gertz* explicitly states that "erroneous statement of fact" is inevitable in free debate and because chilling may occur, some falsehoods must be protected under the First Amendment. *Id.* at 340. And while it is true that false statements are not protected to the same extent as true speech, the Supreme Court has made clear that false statements are not undeserving of First Amendment protection. *See Brown v. Hartlage*, 456 U.S. 45, 60 (1982) (citations omitted). The First Amendment is stated in absolute terms; therefore, protected speech can only be limited where there is some important government interest that outweighs the free speech interests at issue. *See Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50-51 & n. 10 (1961); *see also* Laurence Claus*,* "Protecting Rights from Rights: Enumeration, Disparagement, and the Ninth Amendment," 79 Notre Dame L. Rev. 585 (Feb. 2004)

("Prohibitions of expression ranging from perjury, false advertising, and obscenity, to the rump of defamation law, survive only because the interests that underlie them have been weighed against the interest that underlies the First Amendment have been found weightier.").

Further, false statements of fact are made for many reasons that are not void of protection–in irony, satire, for hyperbolic effect or for comedic purposes. To put the state in the role of fact-checker, with the power of prosecution for those it finds to be lying no matter what their motivation, is a danger the First Amendment attempts to avoid. *See Gertz*, 481 U.S. at 340; *New York Times v. Sullivan*, 376 U.S. 254, 271 (1964). Thus, the false nature of the statement is relevant as to the *amount* of First Amendment protection afforded. Nonetheless, laws impeding even false speech must still offer an important justification.

This conclusion is clear from the contexts where false statements of fact have been criminalized or made punishable civilly. Courts have often cited the governmental interest supporting limitations on false speech such as criminalizing fraudulent statements, libel, and perjury. *See, e.g., Illinois ex. rel. Madigan v. Telemarketing Assoc., Inc.*, 538 U.S. 600 (2003) (finding sufficient justification for a law limiting fraudulent statements by telemarketers because "the government's power to protect people against fraud has always been recognized in this country and is firmly established") (internal citations omitted); *Gertz*, 418 U.S. at 347 (recognizing the strong governmental interest in protecting private individuals from wrongful injury to reputation as justifying libel law). In these cases, a strong governmental interest underlies the limitations on false statements of fact. The critical question then, is whether there is an overriding governmental interest at stake to justify a law impinging on speech.

    B.  <u>The government's interest in prohibiting such speech is insufficient to justify the law.</u>

Thus, inquiry into the nature of governmental interest is required. Here the government's stated interest does not stand up to scrutiny. Contrary to the government's claim, Mr. Strandlof does not claim that protecting the integrity or military decoration is illegitimate. But more than a rational governmental interest is needed to justify a content-based restriction, even false speech. The government's interest must be compelling enough to outweigh the burden imposed on speech.

As argued in Mr. Strandlof's motion to dismiss, a similar distinction was made in the flag-burning context. There, the Court recognized that protecting the integrity of the flag as a symbol of national unity was not an illegitimate government interest. *Texas v. Johnson*, 491 U.S. 397, 417 (1989). National unity was an appropriate sentiment for the government to foster "by persuasion and example." *Id.* at 418. It held, however, that whatever legitimate interest existed was not sufficient to justify a law burdening the speech at issue; the state could not limit the messages that could be attached to the symbol of the flag.[1]

So too here, the government's interest in protecting military decorations cannot justify drawing a line around those military symbols and declare them sacrosanct, beyond the realm of exaggeration, satire, or public comment. The government does not claim that protecting the integrity of the medals is necessary to the functioning of the military. The decorations are no less special to those that receive them, and indeed, the public outcry at false claims to military

---

[1] The government tries to distinguish the flag-burning context because that case "did not concern recognizing military valor or even professional reputation." (Government's Response at 4, n. 1). However, this misses the critical inquiry in both the instant case and *Johnson*, which is how much weight should be given to a government's interest in protecting the integrity of a national symbol, where the law interferes with speech.

4

honors is likely to make the general public more aware of the uniqueness of such decorations. The government may certainly elevate military decorations by honoring recipients, making information readily available to expose those who make false claims, or publicly shame those who make false claims; it cannot make laws criminalizing such false claims.

The case noted by the Court, and cited by the government, *United States v. McGuinn*, 2007 WL 3050502 (S.D.N.Y. Oct. 18, 2007) (unpublished)[2], concerns a similar sub-section of section 704, specifically, wearing a military decoration that has not been awarded to that person. There, the government did not contend that the wearing of military medals, etc., was not constitutionally protected speech. The court assumed, for purposes of its analysis, that wearing of medals, etc. is constitutionally protected. *Id.* at *1-2. At the same time, when balancing the government interest underlying the law, the court noted that defendant had merely stated, "in a conclusory fashion" that the statute "[did] not further an important or substantial government interest." *Id.* at * 2. Because the court did not articulate the reason why the governmental interest outweighed the burden on speech and because it was not presented with the arguments raised here, its blanket statement on the importance of military decorations does not advance the instant analysis greatly. On the other side of the scale is the weight of the speech involved. The

---

[2] Although the court in *McGuinn* did limit the applicablilty of *Sullivan* in the context of *McGuinn's* fact pattern, those limitations are less meaningful here. In *McGuinn,* the defendant argued that protecting reputation is not sufficient to suppress free speech. *See McGuinn*, 2007 WL 3050502 at *2. Thus, any reliance on *Sullivan* was inapposite given that *Sullivan* stands for the proposition that an injury to reputation may be sufficient to limit free speech under circumstances where false statements were made with actual malice. *See id.* As stated above, Mr. Strandlof recognizes that there has been a long-standing First Amendment exception with respect to false speech where it concerns injury to a specific individual's personal reputation. He relies on *Sullivan* as it relates to his argument that false speech is still protected. As *Sullivan* teaches: "Authoritative interpretations of the First Amendment have consistently refused to recognize an exception for any test of truth–whether administered by judges, juries, or administrative officials. . . ." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964).

governmental interest here in protecting the integrity of military decorations does not outweigh the burden on the speech at issue. The law is therefore unconstitutional.

      C.      <u>The Stolen Valor Act is Overbroad.</u>

The government argues at length that the Stolen Valor Act is not void-for-vagueness, an argument never advanced by Mr. Strandlof. *(See* Government's Response at 5-7). In doing so, the government either misunderstands or ignores the First Amendment doctrine of overbreadth. As stated in *Virginia v. Hicks*, 539 U.S. 113 (2003):

> The showing that a law punishes a "substantial" amount of protected speech, "judged in relation to the statute's plainly legitimate sweep," suffices to invalidate *all* enforcement of that law, "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression[.]"

*Id.* at 118-19 (emphasis in original) (citations omitted). The government criticizes Mr. Strandlof's use of hypotheticals in his argument that the Stolen Valor Act is overbroad. However, "[i]n a facial challenge to the overbreadth of a law, a court's first task is to determine whether the enactment reaches a substantial amount of protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). And as one court further explained: "Although the Supreme Court has not explicitly listed the factors to be considered in an overbreadth analysis, those factors have been identified as 'the number of valid applications, *the historic or likely frequency of conceivably impermissible applications*, the nature of the activity or conduct sought to be regulated, and the nature of the state interest underlying the regulation.'" *Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d, 215, 226 (3d Cir. 2004) (emphasis added) (citation omitted). Here, this law not only applies to mistakes but also to innocent bragging, theater, literary fiction, or satire. Clearly, the government's interest in banning such speech is outweighed by the First Amendment rights implicated.

Further, Mr. Strandlof's continues with his claim that the Stolen Valor Act is unconstitutionally overbroad because the statute fails to include an intent requirement. *See Dennis v. United States*, 341 U.S. 494, 500 (1951) ("The existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence."); *see also Morissette v. United States*, 342 U.S. 246, 250-252 (1952). Congress has essentially created a strict liability offense–making it a crime to tell a lie about oneself. And as argued in his motion to dismiss, the statute fails to meet the requirements for any of the three recognized exceptions to the mens rea requirement. (*See* Defendant's Motion to Dismiss at 7-9). Moreover, courts have historically been loathe to sanction strict liability offenses where the law impinges on speech. *See Smith v. State of California*, 361 U.S. 147, 250-54 (collecting cases); *see also X-Citement Video*, 513 U.S. 64, 78 (1994). The lack of a mens req requirement, therefore renders a law on speech particularly suspect.

This law is a gratuitous intrusion on speech. For the foregoing reasons, the defense respectfully requests that the charge be dismissed.

        Respectfully submitted,

        RAYMOND P. MOORE
        Federal Public Defender


        s/ Robert W. Pepin
        ROBERT W. PEPIN
        Office of the Federal Public Defender
        633 - 17th Street, Suite 1000
        Denver, Colorado   80202
        Telephone:  (303) 294-7002
        FAX:  (303) 294-1192
        E-mail:  Robert_Pepin@fd.org
        Attorney for Defendant

**CERTIFICATE OF SERVICE**

     I hereby certify that on January 4, 2010, I electronically filed the foregoing

**SUPPLEMENTAL MOTION AND REPLY TO GOVERNMENT'S RESPONSE**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

    Jeremy S. Sibert,  Assistant U.S. Attorney
    Jeremy.Sibert@usdoj.gov


and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Richard Glen Strandlof
    c/o Independence House


                                                s/   Robert W. Pepin
                                                ROBERT W. PEPIN
                                                Assistant Federal Public Defender
                                                Attorney for Defendant
                                                633 - 17th Street, Suite 1000
                                                Denver, Colorado 80202
                                                (303) 294-7002
                                                (303) 294-1192
                                                Robert_Pepin@fd.org