IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 09-cr-00497-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     RICK GLEN STRANDLOF,
    aka RICK DUNCAN,

    Defendant.

---

**AMENDED GOVERNMENT'S SUPPLEMENTAL BRIEF**

---

The Stolen Valor Act, Title18, United States Code, Section 704(b) does not violate the First Amendment of the United States Constitution. Defendant Strandlof's false statements of fact made in violations of the Act are not constitutionally protected speech.

> The content of the speech itself does not portray a political message, nor does it deal with a matter of public debate. Rather, it appears to be merely a lie intended to impress others...[s]uch lies are not protected by the Constitution. [The] Defendant's statement does not merit the protection of the First Amendment, the statute under which Defendant is being prosecuted, 18 U.S.C. § 704[(b)], cannot be deemed unconstitutional as applied in this case...[or] on its face.

*See United States v. Alvarez*, 07-cr-01035, Document 29 Criminal Minutes-General (Cent Dist. CA Apr. 9, 2008). **See Attachment A.**

The defendant statements in this case are solely false statements of fact about him receiving the Purple Heart and Silver Star Medals. His false statements were not a political message, were not statements of public concern, and contained no viewpoints or opinions. The Act's content-based speech restriction on false statements of fact concerning military awards are

not protected speech.

## Background

On October 1, 2009, a criminal complaint and arrest warrant were filed against the defendant, Rick Glen Strandlof, aka Rick Duncan, for violating Title 18, United States Code, Section 704(b) and (d), False Claims about Receipt of Military Decorations or Medals.

Title 18, United States Code, Section 704(b); False claims about receipt of military decorations or medals states: "Whoever falsely represents himself or herself, verbally or in writing, to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States, any of the service medals or badges awarded to the members of such forces, the ribbon, button, or rosette of any such badge, decoration, or medal, or any colorable imitation of such item shall be fined under this title, imprisoned not more than six months, or both." Section 704(d) references the enhanced penalties described in subsection (b) for offense involving the Purple Heart and Silver Star Medals.

On October 16, 2009, the government filed a five count information charging that the defendant made false claims about receiving the Purple Heart Medal and Silver Star Medal. On December 2, 2009, the defendant filed a motion to dismiss the information and the government filed a response on December 11, 2009. An amended information was filed on December 14, 2009. On December 18, 2009, the Court ordered both parties to file supplemental briefs addressing wether the criminalization of speech in this case violates the First Amendment Right to Freedom of Speech. Specifically, the Court inquires whether false statements made under 18 U.S.C. § 704(b) is protected speech under the First Amendment and if so, does the criminalization of this type of speech serve a compelling government interest to withstand a

constitutional challenge.

## Statement of Facts

Title 18, United States Code, Section 704(b) was enacted into law on December 20, 2006 for the purposes of protecting the reputation and meaning of military decorations and medals. Stolen Valor Act of 2005, Pub. L. No. 109-437, § 2, 120 Stat. 3266, 3266 (2006).

Title 10, United States Code, Section 1131 authorizes the Purple Heart to be awarded pursuant to Executive Order 11016 and states that the medal is only awarded to a person who is a member of the armed forces at the time the person is killed or wounded under circumstances otherwise qualifying that person for award of the Purple Heart. Executive Order 11016, issued by President John F. Kennedy on April 25, 1962, begins by recalling the order establishing the Purple Heart on August 7, 1782 during the War of the Revolution by then General George Washington. Order 11016 goes on to award the Purple Heart to any armed forces member who has been wounded: (a) in any action against an enemy of the United States; (b) in any action with an opposing armed force of a foreign country in which the armed forces of the United States are or have been engaged; (c) while serving with friendly foreign forces engaged in an armed conflict against an opposing armed force in which the United States is not a belligerent party; (d) as the result of an act of any such enemy or opposing armed force; or (e) as the result of an act of any hostile foreign force. Further, the wound for which the award is made must have required treatment of a medical officer. **See Attachment B.**

Title 10, United States Code, Section 6244 provides the President the ability to award a Silver Star Medal of appropriate design, with ribbons and appurtenances, to a person who, while serving in any capacity with the Navy or Marine Corps, is cited for gallantry in action that does

not warrant a Medal of Honor or Naval Cross, (1) while engaged in an action against an enemy of the United States; (2) while engaged in military operations involving conflict with an opposing foreign force; or (3) while serving with friendly foreign forces engaged in an armed conflict against an opposing armed force in which the United States is not a belligerent party.[1]

### Underlying Facts Associated to this Case

On May 4, 2009, the Federal Bureau of Investigation (FBI) received information that the

---

[1] As an example of the gallantry associated with the Silver Star, the following is a citation awarded to a United States Marine Officer in the Battle of Fallujah, Al Amber Providence, Iraq issued by the President of the United States. The name of the Marine Officer has been redacted for privacy reasons. This Marine was also awarded the Purple Heart.

> The President of the United States takes pleasure in presenting the Silver Star Medal to Second Lieutenant X, U.S. Marine Corps (Reserve), for conspicuous gallantry and intrepidity in action against the enemy while serving as Platoon Commander, First Platoon, Company A, First Battalion, Eighth Marines, Regimental Combat Team 7, FIRST Marine Division in support of Operation IRAQI FREEDOM II from 10 to 15 November 2004. During a ferocious enemy counter-attack in the insurgent stronghold of Fallujah, with complete disregard for his own safety, Second Lieutenant X twice exposed himself to vicious enemy fire as he pulled wounded Marines out of the open into shelter. When the amphibious tractors sent to evacuate his wounded men could not locate his position, he once again left the safety of his covered position and rushed through a gauntlet of deadly enemy fire to personally direct the amphibious tractors towards his wounded Marines. On 11 November as the battle continued, Second Lieutenant X recognized the exposed position of his Marines on the rooftops and ordered them to seek cover in the buildings below. Shortly afterwards, he personally assumed the uncovered rooftop position, prompting a hail of deadly fires from the enemy. With rounds impacting all around him, he coolly employed an M240G machine gun to mark targets for supporting tanks, with devastating effects on the enemy. Throughout the battle and despite his own painful shrapnel wounds, he simultaneously directed tank fires, coordinated four separate medical evacuations, and continually attacked with his platoon directly into the heart of the enemy with extreme tenacity. Second Lieutenant X's bold leadership, personal initiative, and total devotion to duty reflected great credit upon him and were in keeping with the highest traditions of the United States Naval Service.

2.

defendant made several verbal statements and posted web profiles where he claimed to have graduated from the Naval Academy and received the Purple Heart for his service in Iraq with the United States Marine Corps (USMC). In addition, it was alleged that defendant Strandlof established a veterans organization called the Colorado Veteran's Alliance and was receiving money on behalf of this organization.

The investigation revealed that Strandlof falsely represented his military background, including his representation that he was awarded the Purple Heart and Silver Star Medals. The defendant represented himself to veterans, the public, and political officials of Colorado as a graduate of the United States Naval Academy, an Iraq War veteran, and a former Captain in the USMC. Defendant Strandlof gave several speeches were he stated he was a wounded veteran who had suffered several injuries from an improvised explosive device while serving his third tour in Iraq, specifically in Fallujah. He continued to fabricate his military service to gain the support of veterans and politicians in Colorado all in an attempt to increase his credibility and status. **See Attachment C (video - will be hand-delivered to the Court and defense counsel).**

After gaining support of several Colorado veterans and politicians, defendant Strandlof established a veterans organization called the Colorado Veteran's Alliance. The Colorado Veteran's Alliance board members consisted of actual veterans. Rick Duncan is the name that Strandlof used to create the organization. In an attempt to solicit funds for the organization, the defendant met with other members of the organization to discuss upcoming events. Over time, other board members began to question defendant Strandlof's stories. The members began to doubt that Strandlof's alleged brain injuries were the cause for his inconsistent statements. When questioned on his inconsistencies, Strandlof replied "that these scramble brains have a

Purple Heart," or words to that effect. In addition, when Strandlof did not wear his alleged medals to a veterans event at the state capital and was asked why he did not wear his medals, he responded by saying he could have worn either his Purple Heart or Silver Star but did not because he did not want to appear over the top or words to that effect. Also, during this time period, while falsely claiming to be a veteran, Strandlof formed a friendly bond with an Army National Guardsman veteran. During one of his conversations with the Guardsman, Strandlof stated that he suffered a brain injury and was awarded the Purple Heart Medal. Strandlof lied to impress and gain the support of others.

As a result of Strandlof's fabrication of his military service, including his false representations of being awarded the Purple Heart and Silver Star Medals, the Colorado Veteran's Alliance organization disbanded and the overall general support for wounded and non-wounded veterans was damaged. Strandlof confesses that as a result of his actions he has hurt the support causes for veterans. **See Attachments D and E (videos - will be hand-delivered to the Court and defense counsel).**

## Argument

The First Amendment states that "Congress shall make no law...abridging the freedom of speech...." U.S. Const. Amend. I.. The Stolen Valor Act, 18 U.S.C. § 704(b), which criminalizes false claims to having received various military medals and declarations, including the Purple Heart and Silver Star Medals, does not restrict protected speech under the First Amendment. The false statements prohibited by the Act are not protected speech. The First Amendment does not protect every spoken word, specifically in this case it does not protect the false representation that the defendant was awarded Purple Heart and Silver Star Medals. Since

the Act does not reach protected speech, the law is not subjected to a strict scrutiny standard. Lies about being awarded the Purple Heart and Silver Star Medals is not speech that presents a political message or deals with a matter of political debate. *See Alvarez*.

Even if this Court finds that the Stolen Valor Act affects protected speech and subjects it to the strict scrutiny standard of the First Amendment, the Act withstands the scrutiny because it serves the compelling interest of "protect[ing] the reputation and meaning of military decorations and medals," essentially safeguarding the building blocks of this country and the honor of the nations war veterans.[2] See Pub. L. No. 109-437 § 2, 120 Stat. 3255 (2006). Further, the Act is narrowly tailored to serve this interest. Since the Act's prohibition is narrowly tailored, its criminal penalty does not violate the First Amendment.

**A. The Stolen Valor Act is Constitutional**

The statement prohibited by the Act is a false statement of fact. 18 U.S.C. § 704(c) (prohibiting anyone from "falsely representing himself or herself...to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States"). False statements of fact have "no constitutional value," unlike pernicious ideals. *Gertz v. Welch*, 418 U.S. 323, 339-40 (1974); *accord New York Times v. Sullivan*, 376 U.S. 254, 270 (1964).

---

[2] The Constitution authorizes Congress the power to "provide for the common Defense," "[t]o raise and support Armies," and "[t]o provide and maintain a Navy." U.S. Const. Art. I, § 8, cls. 11, 12, and 13. "The constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping." *United States v. O'Brian*, 391 U.S. 367, 377 (1968). The Stolen Valor Act's protection of the reputation and dignity of military honor falls within Congress' authority to provide for the national defense. *See United States v. Barnow*, 239 U.S. 74, 76-80 (1915) (sustaining statute that made it a crime to "falsely assume or pretend to be an officer or employee acting under authority of the United States" because Congress could reasonably seek to "maintain the general good repute and dignity of [governmental] service itself" by criminalizing the impersonation of a federal officer.)

"Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues." *Gertz* at 340, *quoting New York Times v. Sullivan* at 721. "[T]he erroneous statement of fact is not worthy of constitutional protection[.]" *Gertz* at 340. The Supreme Court in *Gertz* places false statements of fact in the category of utterances. *Id*. "[U]tterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (1942).

False statements of fact are not worthy of constitutional protections even if the speech is classified as "political speech." *See Garrison v. State of Louisiana*, 379 U.S. 64, 75 (1964)

> That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. For the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected. Calculated falsehood falls into the class of utterances...Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection.

Herbert v. Lands, 441 U.S. 153, 171 (1979) ("Spreading false information in and of itself carries no First Amendment credentials."); *Solano v. Playgirl*, 292 F.3d 1078, 1089 (9th Cir. 2002) ("The First Amendment does not protect knowingly false speech." *quoting New York Times v. Sullivan*); *Pestrak v. Ohio Elections Commission*, 926 F.2d 573, 577 (6th Cir. 1991) ("[F]alse speech, even political speech, does not merit constitutional protection if the speaker knows of the falsehood or recklessly disregards the truth."); *Colson v. Grohman*, 174 F.3d 498, 507 (5th Cir. 1999) ("[I]ntentional or reckless falsehood even political falsehood, enjoys no First Amendment protection." *citing McDonald v. Smith* 472 U.S.479, 487 (1985)) Therefore, "[f]raudulent

misrepresentations can be prohibited and the penal laws used to punish such conduct directly." *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 638 (1980) *(citing Schneider v. State*, 308 U.S. 147, 152 (1939)); *Cantwell v. Connecticut*, 310 U.S. 296, 306 (1940); *Virginia Pharmacy Board v.Virginia Citizens Consumer Council*, 425 U.S. 748, 771 (1976).

However, there is a very limited number of false statements of fact that may be entitled to constitutional protection. Protection has been carved out where "[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters," specifically with the press. *Gertz*, 418 U.S. at 340. The Court referred back to James Madison's statement in the Report on the Virginia Resolutions of 1798 were he stated: "'Some degree of abuse is inseparable from the proper use of every thing; and in no instance is this more true than in that of the press.'" *Id. (citing* 4 J. Elliot, Debates on the Federal Constitution of 1787, p. 571 (1876)). The Supreme Court recognized "that a rule of strict liability that compels a **publisher** or **broadcaster** to guarantee the accuracy of his factual assertions may lead to intolerable self-censorship," and, therefore, may not adequately protect the liberties guaranteed in the First Amendment. *Id* at 340-342. In an effort to keep a balance between the need of an "uninhibited press" and "the legitimate interest in redressing wrongful injury," the Court has "extended a measure of strategic protection to defamatory falsehood." *Id*. at 342. In addition, the Court found that during public debate "erroneous" statements are incapable of being avoided and must be protected to allow the "breathing space" that robust public debate requires in order to survive. *New York Times* 376 U.S. at 271-272 (*citing N.A.A.C.P. v. Button*, 371 U.S. 415, 433 (1963)).

However, there is no First Amendment protection for a lie that is made knowingly and intentionally, even when it is political in nature. *Alvarez* 07-cr-01035, Document 29 Criminal

Minutes-General (Cent Dist. CA Apr. 9, 2008)( citing *Garrison*, 379 U.S. at 75).  Therefore, Congress can create a law that prohibits false statements of fact.  As stated, the only exception is when immunity has been carved out or needs to be carved out because the First Amendment requires a small amount of protection for falsehood in order to protect speech that "matters." *Gertz*, 418 U.S. at 340.   Only false statements "that ultimately promote an 'uninhibited marketplace of ideas'" can be entitled to any protection.  *Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d 215, 228 (3d Cir. 2004) (*quoting Virginia v. Hicks*, 539 US 113 (2003)).  Petty lies, truths about everyday life, or the sort of intentional lies do not promote the "uninhibited marketplace of ideas" and therefore are not protected.  *Id*.

In this case, defendant Strandlof's lies of being awarded the Purple Heart and Silver Star Medals, or any other false claim under the Stolen Valor Act, is not protected speech.  Lying about being awarded military medals is not speech that "matters" in a constitutional sense and, therefore, does not require the necessary protection.  There is no immunity carved out by the Supreme Court for these types of statements.  Protection of these statement is not needed to ensure an "uninhibited press."  Criminalization for making false statements regarding military medals is tolerable and will not lead to an intolerable self-censorship feared by the Supreme Court with speech that matters (publishers, broadcasters, press).   False statements without any protection are not persuasive on matters of public concern, nor do they even express a viewpoint. "Where there is no threat to free and robust debate of public issues, no potential interference with a meaningful dialogue of ideas concerning self-government, and no threat of liability causing a reaction of self-censorship by the press, the First Amendment protection of matters of public concern is not implicated." *Alvarez (quoting Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,

472 U.S. 749, 759 (1985)). The Stolen Valor Act is not political in nature. Defendant Strandlof's statements that he was awarded the Purple Heart and Silver Star Medals does not represent a political message, nor is it a matter of public debate. Therefore, protection for lies on receiving military medals is not necessary for a free press, for freedom of political messages or debate, or for endorsing the marketplace of ideas.

In its order for supplemental briefs, this Court cites *United States v. Williams*, addressing that the Court has placed limits on the policing of fraud when it cuts too far into other protected speech. *See United States v. Williams*, 128 S.Ct. 1830, 1852 n.2 (2008). In *Williams*, the Court cited to a case that "held the solicitation of money by charities to be fully protected as the dissemination of ideas." *See Riley v. National Federation of Blind of N.C., Inc.*, 487 U.S. 781, 803 (1988). Therefore, the limits on policing fraud discussed in *Williams* are labeled as "ideas" that are necessary to promote an uninhibited marketplace of ideas and are unlike lies about receiving military medals, which are not necessary to promote the market place of ideas.

Therefore, 18 U.S.C. § 704(b) is not subject to strict scrutiny because it does not reach protected speech. "The First Amendment 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Connick v. Myers*, 461 U.S. 138, 145 (1983) *(citing Roth v. United States*, 354 U.S. 476, 484 (1957)); *New York Times Co. v. Sullivan*, 376 U.S. at 269. "'[S]peech concerning public affairs is more than self-expression; it is the essence of self-government.'" *Id. (citing Garrison*, 379 U.S. at 74-75).

The defendant argues that false statements are not undeserving of protection and are subjected to scrutiny. *See* Defendant's Supplemental Brief Doc #21, page 2. However, if false statements of facts cannot be characterized as constituting speech on a "matter of public concern"

or "speech that matters," it is unnecessary to scrutinize. *See Pickering v. Bd. of Education*, 391 U.S. 563, 571-572 (1963). The deliberate false statements of the Stolen Valor Act, including the false statements by the defendant receiving the Purple Heart and Silver Star Medals, do not amount to speech on a public issue, a statement on a public official or candidate for public office, a political message, or a statement that expresses a viewpoint or opinion. The defendant expresses no idea or viewpoint on anything by falsifying that he was awarded the Purple Heart and Silver Star Medals. *Alvarez* at 2. For the reasons argued, the Stolen Valor Act is Constitutional and is not a content-based restriction on protected speech.

**B. The Stolen Valor Act Does Not Violate the Overbreadth Doctrine**

The Stolen Valor Act does not violate the Overbreadth Doctrine of the First Amendment. The Overbreadth Doctrine of the First Amendment states that "a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 128 S.Ct. 1830, 1838 (2008), *(citing Virginia v. Hicks*, 539 U.S. 113 (2003)); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). The burden is on the defendant to "demonstrate from the text of the [Act, 18 U.S.C. § 704(b)] and from actual fact that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally," when alleging a statute is overbroad. *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988). The Supreme Court clearly stated "that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 128 S.Ct., at 1838 (*citing Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989)); *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). "Invalidation for overbreadth is "'strong medicine'"that is to be "casually employed." *Williams*, S.Ct., at 1838 (*quoting Los Angeles*

*Police Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32, 39 (1999)) (*quoting New York v. Ferber*, 458 U.S. 747, 769 (1982).

18 U.S.C. § 704(b) is written in plain language that only punishes those that "falsely represent" that they have received military medals, such as the Purple Heart and Silver Star Medals. The Act does not burden any protected speech let alone a substantial amount of protected speech. The Act's only concern is with false statements concerning military medals. As argued, false statements of fact concerning military medals is not protected speech. "The statute is narrowly written to proscribe deliberate false statements concerning a very specific subject matter....the statute does not suppress legitimate political speech. Moreover, the statute does not risk chilling public discourse. Whether one actually received a military award is easily verifiable and not subject to multiple interpretations; thus, there is no danger that the statute will discourage truthful statements about military service or any other matters." *Alvarez* at 3, note 1.

The defendant argues that the statute is overbroad due to the likely frequency of conceivably impermissible applications including mistakes, innocent bragging, theater, literary fiction, or satire. *See* Defendant's Supplemental Brief Doc #21, page 6. The plain language written in the Act and the charge disallows this theory. First, the defendant is charged with "knowingly falsely represent himself, verbally and in writing, to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States...," which eliminates the argument of mistake. Furthermore, as this Court stated in its order, "[a]lthough the Act prescribes no mens rea requirement, under accepted doctrines of statutory interpretation, one may be implied." See Doc #20 (*citing Stapes v. United States*, 511 U.S. 600, 605-606 (1994)). Second, innocent bragging about receiving military medals is still a crime under the

law.  Anyone who falsely represents receiving military medals or decorations under section 704(b) could be subjected to federal prosecution.  Finally, the argument concerning impermissible applications in theater, literary, fiction, or satire fails because the content in those types of productions is unlikely assumed to be factual.  The Act only criminalizes those that knowingly "falsely represent" they were awarded certain military medals.

Furthermore, "federal statutes are to be construed so as to avoid serious doubts as to their constitutionality, and that when faced with such doubts the Court will first determine whether it is fairly possible to interpret the statute in a manner that renders it constitutionally valid." *Communication Workers of Am. v. Beck*, 487 U.S. 735, 762 (1988) *(citing Edward J. Debartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568 (1988)); *Crowell v. Benson*, 285 U.S. 22, 62 (1932).  "Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick*, 413 U.S. at 613 (*citing Dombrowski v. Pfister*, 380 U.S. 479, 491 (1965); *Cox v. New Hampshire*, 312 U.S. 569 (1971)).  The defendant has failed to demonstrate that the Act punishes a substantial amount of protected speech.  Further, if there is any ambiguity, this Court should construe that 18 U.S.C. § 704(b) only be interpreted to effect unprotected false statements of fact.  Clearly, the Act does not violate the Overbreadth Doctrine of the First Amendment.

**C.  Even if this Court finds that the Stolen Valor Act is Subject to Strict Scrutiny, the Act is still Constitutional because it Serves a Compelling Governmental Interest, and the Act is Narrowly Tailored to fit that Interest.**

If the Stolen Valor Act, specifically section 704(b) content-based speech restriction is subject to strict scrutiny, the Act is still constitutional because it serves a compelling governmental interest and is narrowly drafted to serve that interest overcoming the scrutiny.  *See*

*Sable Communications of California, Inc., v. FCC*, 492 U.S. 115, 126 (1989). "The Government may, however, regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest." *Id*.

The Stolen Valor Act, Section 704(b), serves a compelling interest of protecting the sacrifice, history, reputation, honor, and meaning associated with military medals and decorations. This compelling interest of protecting military medals and decorations is clearly portrayed in the bill's introduction,

> Recipients of the Medal of Honor, Distinguished Service Awards, Silver Star, or Purple Heart have made incredible sacrifices for our country. They deserve our thanks and respect. Unfortunately, however, there are some individuals who diminish the accomplishments of award recipients by using medals they have not earned. These imposters use fake medals-or claim to have medals that they have not earned-to gain credibility in their communities....We must never allow their service and sacrifice to be cheapened by those who wish to exploit these honors for personal gain.

*See* 151 Cong.Rec. S12684-01.

War veterans are an important part of our nation's history and are considered heroes for protecting our country. Medals and decorations that war veterans receive for their actions in combat are sacramental in meaning. They symbolize the moral courage an individual puts forth while protecting this country and its freedoms, including Freedom of Speech. The Purple Heart symbolizes self-sacrifice for the common good and the values upon which this country were founded on. It dates back to the Revolutionary War and is essentially one of the building stones of this country. The Silver Star is the third highest medal one can receive in the USMC. It is only awarded to those that display amazing gallantry in combat, which sometimes results in

death.[3] The law requires the President of the United States to authorize the medal.

In addition, individuals who join the military take an oath to protect the United States until death. The recruitment of individuals into the military and military training stresses that as a military member your sacrifice for your country is greater than sacrificing for yourself. Self sacrifice for your country should not be without reward and recognition within the military and society. Military medals and decorations are ways to display this recognition which is essentially important to promote heroism, continual sacrifice, and recruitment for the military. They are a way to display the valor put forth by the protectors of our freedoms. Any dilution of this valor is a dilution to the security of this country.

The defendant is using the First Amendment to try and protect his false claims to being awarded the Purple Heart and Silver Star Medals. These individuals that truly earned military

---

[3] A second example of a Silver Star Citation issued posthumously: The President of the United States takes pride in presenting the Silver Star Medal (Posthumously) to Lance Corporal, U.S. Marine Corps, for conspicuous gallantry and intrepidity in action against the enemy as Machine Gun Team Leader, Company E, Second Battalion, First Marines, Regimental Combat Team 1, FIRST Marine Division, I Marine Expeditionary Force, U.S. Marine Forces Central Command in support of Operation IRAQI FREEDOM II on 26 April 2004. At 1100 on 26 April, a numerically superior enemy force attacked Lance Corporal's platoon from three different directions. In the first 15 minutes of the attack, the enemy fired dozens of rocket-propelled grenades, thousands of machine gun rounds, and then assaulted to within 20 meters of Lance Corporal's position. While throwing grenades and spraying their positions with AK-47 fire, 16 of his fellow Marines on the rooftop position were wounded, some severely. After ensuring his wounded platoon members received medical treatment, he rallied the few remaining members of his platoon and rushed to the critical rooftop defensive position. Braving withering enemy machine gun and rocket-propelled grenade fire, he reached the rooftop and prepared to throw a hand grenade. As he moved into a position from which to throw his grenade, enemy machine gun fire struck Lance Corporal multiple times in the chest. Undaunted by his injuries and with heroic effort, Lance Corporal threw his grenade, which exploded amidst the enemy, halting their furious attack. By his bold leadership, wise judgment, and complete dedication to duty, Lance Corporal reflected great credit upon himself and upheld the highest traditions of the Marine Corps and the United States Naval Service.

awards are the ones that allow the defendant to have the ability to make this First Amendment argument. There is no proper value in public debate or discussion in protecting false claims of military honors. False claims undervalue the truth behind those that serve and sacrifice for these freedoms. On the other hand, there is a substantial interest in protecting the valor of military awards which clearly outweighs lying.

This Court noted Supreme Court precedent holding that a restriction on flag burning was found to be unconstitutional because it lacked the necessary governmental interest to survive strict scrutiny. *See Texas v. Johnson*, 491 U.S. 397 (1989). This Court expressed concern that if flag burning did not withstand scrutiny, would safeguarding the dignity associated with military decorations withstand the same scrutiny. The defendant in *Johnson* committed an act, flag burning, during a political demonstration, which was ruled as protected speech under the First Amendment. *Id*. Flag burning is speech that conveys an idea about this nation and a viewpoint about the state of the nation. If the Stolen Valor Act criminalized public medal destruction, the analogy might apply. However, the *Johnson* case is misapplied in this case because the defendant's "false statement[s] [were] made knowingly and intentionally, and not negligently; nor does [the] [d]efendant claim that his statement[s] about [receiving the Purple Heart and Silver Star Medals express] a political message or viewpoint." *Alvarez* at 2.

Furthermore, the Stolen Valor Act is as narrowly tailored to prevent false statements, and there is not a less restrictive alternative that would serve the government's interest. *See Reno v. American Civil Liberties Union*, 521 U.S. 844, 874 (1997). Since the Act's prohibition on false claims concerning military medals is narrowly tailored, its criminal penalty does not violate the First Amendment. *See Garrison*, 379 U.S. 74-75.

## Conclusion

The Stolen Valor Act, Title 18, United States Code, Section 704(b), is constitutional. False statements of fact are not protected under the First Amendment unless they fall into the category of speech that "matters." False claims on receiving military medals are false statement of facts and do not fall within the narrow exception that provides First Amendment protection. Defendant Strandlof's political statements and viewpoints concerning the Iraq War, political candidates, treatment on veterans, and politicians are all protected under the First Amendment. However, his lying about receiving military medals, false statements of fact, in an effort to increase his status and credibility fall into the class of unprotected "utterances." Such knowingly false statements made with reckless disregard of the truth that fall into the "utterance class" do not enjoy constitutional protection.

Dated this 11th day of January 2010.

Respectfully submitted,

DAVID M. GAOUETTE
United States Attorney

By: s/Jeremy Sibert
JEREMY SIBERT
Assistant United States Attorney
United States Attorney's Office
1225 17th Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Jeremy.Sibert@usdoj.gov

Attorney for the United States

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of January 2010, I electronically filed the foregoing **GOVERNMENT'S SUPPLEMENTAL BRIEF** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

**Robert William Pepin**

Robert_Pepin@fd.org,COX_ECF@fd.org

s/Valerie Nielsen
VALERIE NIELSEN
Legal Assistant
U.S. Attorney's Office
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0406
E-mail: valerie.nielsen@usdoj.gov