IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 09-CR-00497-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     RICK GLEN STRANDLOF,
    a/k/a Rick Duncan,

    Defendant.

---

**GOVERNMENT RESPONSE TO AMICUS CURIAE BRIEF OF
THE RUTHERFORD INSTITUTE (Doc. 31-3)**

---

Pursuant to this Court's Order (*see* Doc. 40), granting the Government's Motion for Leave to File Response to Amicus Curiae Briefs, the United States hereby responds to the amicus curiae brief of the Rutherford Institute (Doc. 31-3).

The Rutherford Institute in its brief appears to be making two main arguments. First, it contends the government wrongly asserts that knowingly false statements of fact are not protected by the First Amendment. (Doc. 31-3 at 2, 3, 7.) Second, it contends that this Court's focus should be on whether the falsehoods threaten to inflict the kind of harm that the government has an interest in preventing or punishing. (Doc. 31-3 at 4, 7.) It concludes that, under this standard, the Stolen Valor Act is inconsistent with the First Amendment because defendant Strandlof's falsehoods did not threaten to inflict concrete, identifiable and focused harm. (Doc. 31-3 at 7-9.)

The Rutherford Institute's arguments are without merit. Defendant Strandlof's knowing lies are simply not the type of speech that the First Amendment protects.

## ARGUMENT

**I.  Defendant Strandlof's Knowing Lies Do Not Fall Into Any Category of Speech Deemed Worthy of Protection Under the First Amendment**

The Rutherford Institute generally contends in its amicus brief that defendant Strandlof's knowingly false statements should be protected under the First Amendment. To the contrary, his knowing lies do not fall into any category of speech deemed worthy of constitutional protection.

The Supreme Court has identified at least one category of speech where knowing falsehoods should not be punished, and several legal scholars have identified a couple of other categories of speech where they suggest knowing falsehoods should go unpunished. The Supreme Court in *New York Times v. Sullivan*, 376 U.S. 254 (1964), stated that false statements about the government are likely protected under the First Amendment. "For good reason, 'no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence.'" *Id*. at 291. Several legal scholars in various law review articles over the last twenty years have suggested that lies about history or science – outside, that is, of the realm of commercial advertising and defamation of individuals – are also probably protected under the First Amendment. *See* Doc. 30-3 at 8-9 of 17 (amicus curiae brief of Eugene Volokh and law review articles cited therein). And at least one legal scholar has suggest that a "public" fraud, described as a false statement made in a political campaign, should be constitutionally protected as long as an individual is not defamed by the

false statement. *See* Charles Fried, *The New First Amendment Jurisprudence: A Threat to Liberty*, 59 U. Chi. L. Rev. 225, 238 (1992).

False statements falling into one of these limited categories appear to be worthy of constitutional protection for the reason that the risk of liability for falsehoods would deter not just false statements but also true statements. *New York Times*, 376 U.S. at 278-79. If a speaker could be deterred from making a true statement for fear that the statement might be punished as a false statement, the criminal statute could have a "chilling effect" on First Amendment freedoms. *Id*. at 300-01. But punishing knowing lies about one's alleged medals is especially unlikely to deter true statements about medals. This is because an individual's claim that he had received such a medal is objective and verifiable. Resolving whether an individual had received a medal of valor is easily accomplished. Indeed, it would be highly unlikely for a jury to have any difficulty ascertaining the truth of such claims. The threat of liability under the Stolen Valor Act can have no "chilling effect" on any speaker's interest in making true statements about his military medals.

Nor can defendant Strandlof's knowing false statements be protected as some form of contribution to "public debate." The Supreme Court has noted that "[e]ven a false statement may be deemed to make a valuable contribution to public debate, since it brings about 'the clearer perception and livelier impression of truth, produced by its collision with error.'" *New York Times*, 376 U.S. at 279 n.20 (citation omitted). Neither defendant Strandlof nor the Rutherford Institute have argued, however, in any filing in this case, that the particular false statements at issue in this matter make such a contribution to public debate. Indeed, as the government has

demonstrated, defendant Strandlof's false statements make no such contribution. *See* Doc. 27 at 1, 10-12. Defendant Strandlof's falsehoods are also thus undeserving of protection under this principle.

Finally, defendant Strandlof's lies cannot be exempted on the grounds they constitute only puffing or bragging. Recently the Supreme Court in *United States v. Williams*, 128 S.Ct. 1830 (2008), noted that certain types of speech are simply "not protected by the First Amendment," *id.* at 1835-36, and it suggested that certain statements that "have no social value … enjoy no First Amendment protection." *Id.* at 1841. The *Williams* court then even suggested that liars get no constitutional protection. *Williams* addressed a ban on offering child pornography. The 11th Circuit held that the ban was overbroad because it might punish a mere "braggart, exaggerator, or outright liar" who had no intention to really offer child porn. *Id.* at 1842. The Supreme Court disagreed and found this overbreadth unproblematic, noting that the government can ban fraud, and so "such statements are doubly excluded from the First Amendment." *Id.* In other words, the Supreme Court indicated that false statements by "braggarts" and "exaggerators" are excluded from the First Amendment because such statements are fraudulent.[1] Defendant Strandlof's knowing lies are thus undeserving of protection in light of *Williams*. Even if Strandlof had only been bragging or exaggerating when he lied about possessing medals of valor, his statements are

---

[1] Justice Stevens noted, in concurrence, that this exclusion from coverage might not apply to conduct that possesses "serious literary, artistic, political or scientific value." *Id.* at 1848 (Stevens, J., concurring). But as is clear from both defendant Strandlof's and the Rutherford Institute's filings in this case, they do not contend that defendant Strandlof's knowing lies possess any serious literary, artistic, political or scientific value.

excluded from the First Amendment because they are knowingly fraudulent.[2]

## II. The Stolen Valor Act Should Not Be Analyzed under the "Compelling Interest" Test

The Rutherford Institute appears to suggest that defendant Strandlof has been charged under the Stolen Valor Act because of the content of his speech. This Court, in conducting its First Amendment analysis, should conclude that the Act is content-neutral, and the Court should not require a compelling government interest to uphold the Act.

In its Order for Supplemental Briefing (Doc. 20), this Court cited *Boos v. Barry*, 485 U.S. 312, 321 (1988), for the proposition that "[a] law that imposes a content-based restriction on pure speech generally is subjected to strict scrutiny and cannot stand unless it is narrowly [tailored] to serve a compelling government interest." The holding in *Boos* appears to be more limited, however. *Boos* does not stand for the proposition that all content-based prohibitions are reviewed under a compelling interest standard. Rather, it applies "exacting scrutiny" to "a content-based restriction on political speech in a public forum," *id.* at 321, and a restriction that involved viewpoint discrimination. Here, the statute does not focus on political speech or on speech in a public forum, and there is no allegation of any viewpoint that is being restricted.

---

[2] *Williams* also seems to suggest that a motion to dismiss the indictment must mount essentially a facial challenge – arguing not that this case is bad, but that the statute covers other protected speech. *Williams* appears to contain a limitation: some potential overbreadth is fine, as long as there isn't substantial overbreadth. The Court said in *Williams* that facial invalidity is not shown if some protected speech might be chilled; rather, a party needs to show that the statute "prohibits a substantial amount of protected speech." 128 S.Ct. at 1838. Thus, some chilling effect is not enough; there needs to be a chilling effect on a substantial amount of protected speech. Here, most -- if not all -- of the speech to be chilled is the speech the statute is aimed at.

Moreover, the compelling interest test has generally been reserved for restrictions on "valuable speech," such as expressions of opinion. *See*, *e.g.*, *Texas v. Johnson*, 491 U.S. 397 (1989). Defendant Strandlof has not contended that he is expressing any "opinion" by way of his knowingly false statements.

Furthermore, the Supreme Court has in many instances upheld the constitutionality of statutes criminalizing false statements of fact without subjecting the statute to the compelling interest test. *See*, *e.g.*, *Time, Inc. v. Hill*, 385 U.S. 374 (1967) (false light invasion of privacy); *Cantrell v. Forest City Publishing Co.*, 419 U.S. 245 (1974) (same); *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988) (knowingly false statements that intentionally inflict severe emotional distress); *Konigsberg v. State Bar*, 366 U.S. 36, 50 n.10 (1961) (perjury).

Therefore, the Stolen Valor Act should not be analyzed under the compelling interest test. Instead it should be viewed as content-neutral. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). A content-neutral restriction must be "narrowly tailored to serve a significant governmental interest." *Id*. (quotation omitted). Here, the Stolen Valor Act is narrowly written to proscribe false statements concerning a very specific subject matter, and it serves a significant governmental interest. It prevents individuals such as defendant Strandlof from manipulating people's behavior through falsehood, and it prevents harm to the U.S. military by criminalizing

behavior that would otherwise demean and devalue medals of honor.[3]

Alternatively, the Stolen Valor Act may be analyzed under a "balancing test" of sorts. The Supreme Court appears to be saying in *Garrison v. Louisiana*, 379 U.S. 64 (1964), that false statements having, at most, only "slight social value" that may be outweighed by governmental interests enjoy no constitutional protection: "Calculated falsehood falls into that class of utterances which are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality…. Hence, the knowingly false statement and the false statement made with reckless disregard for the truth do not enjoy constitutional protection." *Id*. at 75 (citations omitted). *Garrison* suggests support for two ideas: (1) there may be no protection at all for false statements that are not part of any exposition of ideas, or (2) even if there is, such statements have such "slight social value" that all that is required is a sufficient governmental interest. Here, there is no dispute that defendant Strandlof's false utterances were not part of any exposition of ideas, but even if they were they have such slight social value that the government's interest in preventing harm to those hearing his falsehoods demonstrates that his statements are not constitutionally protected.

**III.   Defendant Strandlof's Knowing Falsehoods are Harmful, and of a Nature that the Government Has an Interest in Preventing and Punishing**

The Rutherford Institute contends that the standard this Court should apply, in assessing

---

[3] Indeed, the government submits that even under the compelling interest test, the Stolen Valor Act is constitutional. It is narrowly tailored to serve a compelling government interest: protecting the public against fraud, and protecting the interests of national security.

7

whether the Stolen Valor Act violates the First Amendment, is whether defendant Strandlof's falsehoods threaten to inflict the kind of harm that the government has an interest in preventing or punishing. (Doc. 31-3 at 4, 7.) The Institute offers several reasons in support of its conclusion that the Stolen Valor Act, under this proposed standard, is inconsistent with the First Amendment. The government disagrees that the Institute has set forth the proper standard for this Court to apply. Instead, as shown above in Part II, this Court should view the Stolen Valor Act as content-neutral, and should uphold it on the basis that it is narrowly tailored to serve a significant governmental interest. Alternatively, this Court should determine, after "balancing" the relative interests at stake here, that defendant Strandlof's knowing falsehoods do not enjoy constitutional protection. Nevertheless, even under the Institute's proposed standard, defendant Strandlof's falsehoods do indeed threaten to inflict the kind of harm that the government has an interest in preventing or punishing.

First, the Institute argues that Congress meant, by way of the Stolen Valor Act, to prevent the "cheapening" of the accomplishments of those who actually earned military awards. (Doc. 31-3 at 7.) It argues that "the false, self-aggrandizing statements of others cannot lessen the honor bestowed on those who have achieved their military awards" and that "a claim of battlefield distinction or courage by one (false or otherwise) [does not] necessarily divert[] respect and honor from others who have actually earned their awards. (Doc. 31-3 at 7-8.) This argument is fallacious. If a person can untruthfully claim without fear of recourse to possess medals of honor, such medals lose their significance, attention is diverted from those servicemen who have actually earned such awards, and soldiers may well lose incentive to risk their lives to

8

earn such awards.

Second, the Rutherford Institute argues that the fact that society finds particular speech offensive is no basis for punishing or suppressing that speech. (Doc. 31-3 at 8) (citing *Texas v. Johnson*, 491 U.S. 397 (1989) (flag-burning case)). This proposition is clearly incorrect. Many child pornography laws, for example, have been upheld in the face of First Amendment challenges because society finds such speech repugnant. *See*, *e.g.*, *Williams*, 128 S.Ct. 1830. Nevertheless, the government agrees that some speech should be protected under the First Amendment, even if it offensive, as long as the speech possesses some constitutional value or otherwise contributes to public debate. *See* Doc. 27 at 9 (citations omitted). Defendant Strandlof's knowing false statements are not, however, symbolic speech in the classic sense that flag-burning constitutes symbolic speech, and Strandlof has not argued in any of his briefings to this Court that his false statements are symbolic speech or that they contribute to public debate.

Third, the Rutherford Institute contends that "[t]he kind of false, self-aggrandizing statements at issue in this case are . . . generalized 'public' frauds and deceptions for which punishment should not be allowed under the First Amendment." (Doc. 31-3 at 8) (citing Fried, *The New First Amendment Jurisprudence: A Threat to Liberty*, 59 U. Chi. L. Rev. at 238). Professor Fried provides as an example of a "public" fraud protected by the First Amendment a misstatement, deception or defamation in a political campaign. *Id*. He states that such speech is "immune from legal sanction unless [it] violate[s] private rights--that is, unless individuals are defamed." *Id*. at 238. But Defendant Strandlof's false statements at issue in this case do not constitute "public" speech of this nature. His deception was certainly not committed in the

context of a political campaign nor was his false speech remotely political in nature.

Fourth, the Institute argues that it is no justification for the Stolen Valor Act to argue that the kind of false statements defendant Strandlof made have no "value." (Doc. 31-3 at 8.) But the Institute never ties this legal principle to the facts of this case: it never explains or argues that Defendant Strandlof's false statements actually *do* have any value. Similarly, the Institute raises the specter that the government, by way of the Stolen Valor Act, is determining what expression is valuable: "Singling out one or a small group of lies for government condemnation, while leaving others unregulated, signifies a 'realistic probability that official suppression of ideas is afoot.'" (Doc. 31-3 at 9) (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992)). But the Stolen Valor Act does not single out any person or group. Nor does the Act pose any realistic probability that official suppression of ideas is afoot. False claims of military honors are not limited to any particular viewpoints, or even particular topics of debate.

Finally, the Institute argues that the Stolen Valor Act is inconsistent with the First Amendment because defendant Strandlof's falsehoods did not threaten to inflict concrete, identifiable and focused harm. (Doc. 31-3 at 7-9.) To the contrary, "substantial harm" is indeed caused by false claims of military honors. People who lie about having received military decorations generally do so for a reason. They seek to deceive others for personal gain, and to try to manipulate people's behavior through falsehood. Indeed, their false claims are quite likely to affect others' behavior, since having a military decoration is seen as a mark of heroism, bravery, and in general good character. In addition, such falsehoods pose the potential to harm not only those who hear such lies, but also the U.S. military itself. Medals of honor may well provide an

incentive for soldiers to risk their lives to achieve such awards; the medals are one of the highest recognitions offered in the military. Diluting the meaning or significance of medals of honor, by allowing anyone to claim to possess such decorations, could impact the motivation of soldiers to engage in valorous, and extremely dangerous, behavior on the battlefield.

## CONCLUSION

For the above reasons, and those in the government's other filings in this case, this Court should find that the Stolen Valor Act, 18 U.S.C. § 704(b), is constitutional, and it should deny defendant Strandlof's motion to dismiss.

Dated: February 8, 2010

                                      Respectfully submitted,

                                      DAVID M. GAOUETTE
                                      United States Attorney

By:   s/Jeremy Sibert
       JEREMY SIBERT
       Assistant United States Attorney
       United States Attorney's Office
       1225 17th Street, Suite 700
       Denver, Colorado 80202
       Telephone: (303) 454-0100
       Fax: (303) 454-0403
       E-mail: Jeremy.Sibert@usdoj.gov

       Attorney for the United States

# CERTIFICATE OF SERVICE

      I hereby certify that on this 8th day of February, 2010, I electronically filed the foregoing **GOVERNMENT RESPONSE TO AMICUS CURIAE BRIEF OF THE RUTHERFORD INSTITUTE (Doc. 31-3)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

**Christopher P. Beall**
cbeall@lskslaw.com,mkelley@lskslaw.com,chenning@lskslaw.com

**Jonathan B. Boonin**
boonin@hbcboulder.com,chapman@hbcboulder.com,goe@hbcboulder.com

**Robert William Pepin**
Robert_Pepin@fd.org,COX_ECF@fd.org

                                                s/Valerie Nielsen
                                                VALERIE NIELSEN
                                                Legal Assistant
                                                U.S. Attorney's Office
                                                1225 Seventeenth Street, Suite 700
                                                Denver, Colorado 80202
                                                Telephone: (303) 454-0100
                                                Fax:   (303) 454-0406
                                                E-mail: valerie.nielsen@usdoj.gov